(893 P.2d 262)
No. 71,593

WILLIAM TOMPKINS, *Appellee*, v. ROGER N. BISE, M.D.,
*Appellant.*

Opinion filed
April 7, 1995.

*Thomas M. Sutherland* and *Brent G. Wright,* of Holbrook, Heaven & Fay,
P.A. of Kansas City, for the appellant.

*Richard P. Senecal* and *Patrick E. Henderson,* of Duncan, Senecal and Asher,
Chartered, of Atchison, for the appellee.

Before GERNON, P.J., LARSON and PIERRON, JJ.

PIERRON, J.: Dr. Roger N. Bise appeals from the district court's
admission of expert testimony and failure to grant a directed ver-
dict in his favor in this medical malpractice case initiated against
him by William Tompkins.

Tompkins was injured in a motorcycle accident. Bise, a plastic surgeon, operated on Tompkins to repair his broken jaw. Tompkins later filed suit against Bise, alleging Bise's treatment was negligent and fell below the appropriate standard of medical care.

At a discovery conference, Tompkins was ordered to identify any and all expert witnesses he planned to use at trial. Tompkins identified Anthony M. Captline, D.M.D., J.D., a dentist qualified to practice oral and maxillofacial surgery, as his expert witness. Bise designated John W. Canady, M.D., a licensed physician who was board certified in plastic surgery and otolaryngology, and Steven L. Thomas, D.D.S., a dentist who was board certified in oral and maxillofacial surgery, as his two expert witnesses. Later, after designating these two experts, Bise filed a motion to strike Captline as Tompkins' expert witness because Captline was a dentist rather than a doctor and/or a plastic surgeon.

The district court stated that, while Bise is a plastic surgeon, the surgery giving rise to this case was oral and maxillofacial surgery. Because the alleged negligence in this case occurred while Bise was engaged in the practice of oral and maxillofacial surgery, Captline was qualified to testify as to the appropriate standard of medical care. The court ruled oral and maxillofacial surgery was the "profession" referred to by K.S.A. 60-3412, as applied to this case.

At trial, the court allowed Captline to testify over Bise's objection. Captline testified Bise's treatment of Tompkins fell below the standard of care for an oral and maxillofacial surgeon.

At the close of Tompkins' evidence, Bise moved for a directed verdict, alleging there had been no appropriate expert testimony that Bise had fallen below an acceptable standard of care in treating Tompkins. The court denied Bise's motion

Bise and his experts all testified that Bise's treatment of Tompkins was appropriate, given Bise's concern for the well being of the entire patient and not just the jaw area. Bise testified that, for physicians, the most important thing was to take care of the entire patient. He stated he had concerns that Tompkins may have had a closed head injury or pulmonary contusion. Because of these concerns, Bise testified, his approach was, overall, the

safer and more appropriate procedure. Captline admitted at trial that he was not a plastic surgeon and was not qualified to treat head or pulmonary injuries.

The jury found Bise 33.75% at fault for Tompkins' injuries. It concluded Tompkins' total damages were $195,390.89. The district court entered judgment against Bise in the amount of $65,944.43.

Bise contends the district court erred in allowing Captline to testify because the court misconstrued 60-3412. Tompkins, on the other hand, contends Bise misconstrues 60-3412. He states this statute was intended only to prohibit the testimony of professional witnesses in medical malpractice cases.

This issue involves an interpretation of 60-3412. Interpretation of a statute is an issue of law and subject to de novo review. *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993); *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

K.S.A. 60-3412 states as follows:

"In any medical malpractice liability action, as defined in K.S.A. 60-3401 and amendments thereto, in which the standard of care given by a practitioner of the healing arts is at issue, no person shall qualify as an expert witness on such issue unless at least 50% of such person's professional time within the two-year period preceding the incident giving rise to the action is devoted to actual clinical practice in the same profession in which the defendant is licensed."

Bise states there are four requirements under this statute. He contends:

"(1) [T]he underlying action must be a medical malpractice liability action as defined by K.S.A. 60-3401, (2) the standard of care of a 'practitioner of the healing arts' must be at issue, (3) the proposed expert witness must practice in the same profession in which the defendant is licensed, and (4) the proposed witness must have practiced in such profession at least fifty percent (50%) of his or her time within the two-year period preceding the incident giving rise to the plaintiff's action."

The parties agree this is a medical malpractice liability action and the standard of care of a practitioner of the healing arts is at issue. They disagree about the correct interpretation of practicing "in the same profession as that in which the defendant is licensed."

Bise alleges Captline was not a health care provider under the statute. Therefore, he certainly could not be considered to be in the same profession as Bise and should not have been allowed to testify against Bise.

K.S.A. 60-3401 applies to the entire act governing professional liability actions, of which 60-3412 is a part. K.S.A. 60-3401(c) simply states that " '[h]ealth care provider' has the meaning provided by K.S.A. 40-3401 and amendments thereto." K.S.A. 40-3401(f) defines a health care provider to include "a dentist certified by the state board of healing arts to administer anesthetics."

Captline is a dentist certified to administer anesthetics. He would qualify as a health care provider for the purposes of 60-3412, and this part of Bise's argument is without merit.

The issue is really what the statute means by "actual clinical practice in the same profession in which the defendant is licensed." The district court interpreted this to mean that an expert could be a person who was engaged in the same type of practice as the defendant. Because the district court concluded that Bise was actually engaged in oral and maxillofacial surgery at the time of his alleged negligence, the court believed it was acceptable for an oral surgeon to testify as an expert against him.

In interpreting a statute, this court should presume the legislature intended to use the actual words it utilizes in a statute and that it intended to use the ordinary and common meanings of those words. *Bank of Kansas v. Davison*, 253 Kan. 780, 788, 861 P.2d 806 (1993). When interpreting the language of the statute, the court should give the words used in the statute their ordinary, common, and natural meanings. *Bank IV Wichita v. Plein*, 250 Kan. 701, 705-06, 830 P.2d 29 (1992). Further, when the language of the statute is "plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

All of the above rules are subordinate to the rule that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). In determining the legislature's intent, the court

should consider the entire act in question. *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992).

Under the plain meaning of the statute, the district court erred in allowing Captline, an oral surgeon who is a dentist, to testify against Bise, a plastic surgeon who is practicing oral surgery. Although both men practice in the field of oral surgery, the statute requires the proposed expert to be engaged in actual practice in the same field in which the defendant is *licensed*. Bise is licensed by the state board of healing arts in the field of medicine. Captline, on the other hand, is licensed by the state dental board in the field of dentistry.

Further, although the case law has interpreted the same professional requirement of 60-3412 liberally to allow one physician to testify against another physician of any specialty, the courts have never allowed a professional from another field to testify against a physician.

In *Wisker v. Hart*, 244 Kan. 36, 766 P.2d 168 (1988), the Kansas Supreme Court held that a general practitioner could testify as to the standard of care for a surgeon, and vice versa. The court stated:

"K.S.A. 1987 Supp. 60-3412 is intended to prevent the use of 'professional witnesses.' . . . The statute was not intended to require that only a surgeon could testify as to the standard of care of another surgeon, etc. The weight afforded the testimony of *physicians* testifying outside their area of professional specialization is a matter to be determined by the jury." (Emphasis added.) 244 Kan. at 43-44.

See also *Denton by Jamison v. U.S.*, 731 F. Supp. 1034 (D. Kan. 1990), (federal court interpreted 60-3412 to allow a doctor of osteopathy to testify against a medical hospital).

Captline even admitted that to his knowledge, the standard of care for oral surgery may be different than that for plastic surgery.

Although we believe the language of 60-3412 is clear in regard to who may testify as an expert in a medical malpractice liability action, we have considered Tompkins' argument that the statute was only concerned with eliminating "professional witnesses." To a certain extent, Tompkins' argument is correct. The legislative history indicates a desire to eliminate the pernicious effects of

"despicable . . . 'hired guns' who travel all over the country, testifying for hire, and rarely if ever actually practicing medicine." H.B. 2661, Testimony of David S. Litwin Before House Judiciary Committee, February 10, 1986.

However, the legislative history and language show no intent to also expand the standard for expert witnesses in medical malpractice actions beyond that which is clearly stated in the statute: the expert must be licensed in the same profession. No exception is made for other health care providers who might practice in similar or related areas.

Tompkins further argues Bise acquiesced in the district court's decision to allow Captline to testify when Bise designated a dentist as one of the experts he would ·call at trial. Bise correctly points out that all of the case law cited by Tompkins in support of this proposition applies only to acquiescence in judgments rather than procedural decisions by the district court. Bise contends he did everything he could to preserve the issue of improper expert testimony for appellate review, and the fact that he called his own dentist to attempt to rebut Captline's testimony should not be used to preclude appellate review.

As a general rule, acquiescence in a judgment precludes any appellate review of the judgment. *Younger v. Mitchell*, 245 Kan. 204, 777 P.2d 789 (1989).

"[A]cquiescence sufficient to cut off a right to appeal is voluntary compliance with the judgment. In order for an appellate court to hold that a party has acquiesced in a judgment, it must be shown that the appellant has either assumed burdens or accepted benefits of the judgment contested in the appeal." 245 Kan. 204, Syl. ¶ 1.

The rationale for this rule is that the courts do not wish to allow a party to voluntarily comply with a judgment and later adopt an inconsistent position on appeal. *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 495, 866 P.2d 1044 (1994).

The case law does not apply to individual rulings by the district court. Rather, it applies to actions taken in compliance with the ultimate judgment made by the court.

Further, there are exceptions to the general rule about acquiescence. Even if we accept Tompkins' argument that the ac-

quiescence rule applies to individual rulings by the district court, Bise's action in calling his own dentist falls within one of the exceptions to the acquiescence rule. A waiver of a party's right to appeal " 'is not implied from measures taken by an appellant in defense of and to protect his [or her] rights or interest.' " *Plein*, 250 Kan. at 709 (quoting *McDaniel v. Jones*, 235 Kan. 93, 102, 679 P.2d 682 [1984]). Bise called a dentist to rebut the testimony of Captline in order to protect himself against the possibility (and eventual reality) of the district court's ruling that this testimony was admissible. This action is not acquiescence in light of the fact that Bise opposed Captline's testimony both prior to and at the trial.

Reversed.

GERNON, J., dissenting: The majority disqualifies Captline from testifying solely because he is licensed as a dentist rather than medical doctor. As I read K.S.A. 60-3412, this analysis is misplaced.

The statute in question states: "[N]o person shall qualify as an expert witness on such issue unless at least 50% of such person's professional time within the two-year period preceding the incident giving rise to the action is devoted to the *actual clinical practice in the same profession in which the defendant is licensed.*" (Emphasis added.) In the present case, Captline was a dentist qualified to practice oral and maxillofacial surgery. The record reflects that he spent more than 50% of his time in actual clinical practice performing oral and maxillofacial surgery, the profession in which Bise was licensed. Substantial competent evidence supports the district court's finding of fact that Bise was engaged in the practice or oral surgery rather than plastic surgery at the time of the incident in the present case. To disqualify Captline from testifying solely because of the nature of his license strains the meaning of the plain language employed by the legislature in K.S.A. 60-3412.

In *Wisker v. Hart*, 244 Kan. 36, 43-44, 766 P.2d 168 (1988), the court stated that K.S.A. 60-3412 was intended to prevent the use of professional witnesses, but "not intended to require that

only a surgeon could testify as to the standard of care of another surgeon, etc. The weight afforded the testimony of physicians testifying outside their area of professional specialization is a matter to be determined by the jury." 244 Kan. at 44. The fact that Captline was licensed as a dentist rather than a medical doctor goes to the weight, not the admissibility, of his testimony. The foundation for his testimony clearly showed that he had performed the type of surgery involved here about a thousand times.

I would affirm the district court.