No. 71,593

WILLIAM TOMPKINS, *Appellee,* v. ROGER N. BISE, M.D.,
*Appellant.*
(910 P.2d 185)

Opinion filed January 26, 1996.

*Thomas M. Sutherland,* of Holbrook, Heaven & Fay, P.A., of Kansas City, argued the cause, and *Brent G. Wright,* of the same firm, was with him on the briefs for appellant.

*Richard P. Senecal,* of Duncan and Senecal, Chartered, of Atchison, and *Patrick E. Henderson,* of the same firm, argued the cause and were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Patient filed a medical liability action against a medical doctor for alleged negligent treatment of a jaw injury. The jury found that the doctor was negligent and awarded damages. The medical doctor appealed the district court's admission of the expert testimony of a dentist who performed similar operations but was not licensed as a medical doctor. The Court of Appeals found that K.S.A. 60-3412 requires that an expert witness in a medical malpractice action be licensed in the same profession in which the defendant health care provider is licensed and reversed the district court in *Tompkins v. Bise*, 20 Kan. App. 2d 837, 893 P.2d 262 (1995). This court granted the patient's petition for review.

Plaintiff William Tompkins was injured in a motorcycle accident on November 5, 1990. He suffered two fractures to his jaw, which were treated by Dr. Roger N. Bise. Bise had completed medical school, 5 years of surgical and plastic surgery training, and a 6-month fellowship in cranial maxillofacial surgery. He also had been a licensed dentist and had practiced dentistry in Kansas while attending medical school. At the time of trial Bise's Kansas dental license was inactive, though he was licensed to practice dentistry in Missouri.

Bise performed surgery on Tompkins on November 7, 1990, using a "closed" reduction procedure (without making additional incisions). Tompkins was released from the hospital on November 9, 1990. Tompkins saw Bise for several follow-up visits.

On April 19, 1993, Tompkins initiated this medical liability action against Bise, alleging that Bise's treatment of Tompkins' jaw injury was negligent and below the acceptable standard of care. Tompkins designated Dr. Anthony M. Captline, a certified oral and maxillofacial surgeon, as his expert witness. Captline has a Doctor of Medical Dentistry degree, and he completed an additional 3 years of training in oral and maxillofacial surgery. Bise designated John W. Canady, M.D., Steven L. Thomas, D.D.S., and Paul Manson, M.D., as his expert witnesses.

Bise filed a motion to strike Captline as an expert witness. Bise argued that K.S.A. 60-3412 requires that an expert witness devote

at least 50% of his or her professional time to actual clinical practice in the same profession in which the defendant is licensed. Bise argued that because Captline is a dentist and Bise is a medical doctor, Captline was not licensed in the same profession and, therefore, did not meet the requirements of K.S.A. 60-3412 to be an expert witness. The district court denied Bise's motion and found that the professional standard of care of oral and maxillofacial surgery was at issue and both Bise and Captline were qualified to practice in that field. Bise preserved his objection to Captline's qualifications to testify as an expert witness.

. At trial, Captline testified that Bise performed oral and maxillofacial surgery, not plastic surgery, on Tompkins. Captline opined that Bise's treatment of Tompkins fell below the standard of care of an oral and maxillofacial surgeon. Captline asserted that Bise should have used an open, rather than closed, reduction procedure and that Bise failed to correct problems which developed due to muscle pull. Captline stated that he did not have an opinion as to the standard of care of a plastic and reconstructive surgeon.

Bise testified that his primary concern in treating Tompkins was to treat the entire patient, not just the jaw injury. He opted against an open reduction procedure due to the risks anticipated because Tompkins had a possible head injury and pulmonary contusion. As his expert witnesses, Bise called Dr. Canady, a physician certified in ear, nose, and throat treatment and in plastic surgery, and Dr. Thomas, who is trained as a dentist (D.D.S.) and is a board certified oral and maxillofacial surgeon. Both Canady and Thomas opined that Bise properly used a closed reduction procedure because of the possibility that Tompkins had a closed head injury or pulmonary contusion and because that procedure was the least intrusive and would avoid the potential risks associated with an open reduction procedure. Both experts testified that Bise met the standard of care both in his treatment of the jaw injury and in the follow-up care.

The jury returned a verdict in favor of Tompkins. The jury found that Tompkins' total damages were $195,390.89 and that Bise was 33.75% at fault. Bise timely appealed.

In a 2-1 decision, the Court of Appeals reversed the trial court's determination that Captline qualified as an expert witness under K.S.A. 60-3412. The majority pointed out that Bise is licensed by the State Board of Healing Arts in the field of medicine, whereas Captline is licensed by the State Dental Board in the field of dentistry. The majority also noted Captline had admitted that to his knowledge the standard of care of oral surgery may be different than the standard of care of plastic surgery. After reviewing the legislative history and the language of K.S.A. 60-3412, the majority held that the statute requires that the expert must be licensed in the same profession as the defendant is licensed. The majority concluded that the statute does not permit experts who are licensed in a different profession but who practice in similar or related areas to testify as expert witnesses in medical malpractice actions. 20 Kan. App. 2d at 841-42.

The dissent observed that K.S.A. 60-3412 states: "[N]o person shall qualify as an expert witness on such issue unless at least 50% of such person's professional time within the two-year period preceding the incident giving rise to the action is devoted to *actual clinical practice in the same profession in which the defendant is licensed.*" (Emphasis added.) The dissent pointed out that the trial court determined Bise was engaged in the practice of oral surgery, not plastic surgery, in treating Tompkins. It noted that Captline was a dentist qualified to practice oral and maxillofacial surgery and spent more than 50% of his time in actual clinical practice performing oral and maxillofacial surgery, the field in which Bise was licensed. The dissent reasoned that to disqualify Captline from testifying solely because of the nature of his license strains the meaning of the plain language employed by the legislature in K.S.A. 60-3412. The dissent concluded that Captline's licensure as a dentist rather than a physician went to the weight, not the admissibility, of his testimony. 20 Kan. App. 2d at 843-44. This court granted Tompkins' petition for review.

A medical malpractice action for damages for personal injury arising out of the rendering of professional services by a health care provider is governed by K.S.A. 60-3401 *et seq.* The question is, does K.S.A. 60-3412 require that an expert witness in a medical

malpractice action be a health care provider licensed by the same professional board as the defendant, or does it require the expert witness to be engaged in performing a similar medical procedure as the defendant health care provider?

Interpretation of a statute is a question of law. An appellate court's review of questions of law is unlimited. *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). The rules of statutory construction have been often stated. It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). When a statute is plain and unambiguous, the court must give effect to the intent of the legislature as expressed rather than determine what the law should or should not be. *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). The legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results. *Todd v. Kelly*, 251 Kan. 512, 520, 837 P.2d 381 (1992).

K.S.A. 60-3412 provides:

"In any medical malpractice liability action, as defined in K.S.A. 60-3401 and amendments thereto, in which the standard of care given by a practitioner of the healing arts is at issue, no person shall qualify as an expert witness on such issue unless at least 50% of such person's professional time within the two-year period preceding the incident giving rise to the action is devoted to actual clinical practice in the same profession in which the defendant is licensed."

The Court of Appeals stated that K.S.A. 60-3412 sets out four requirements for expert testimony concerning medical malpractice. First, the case must be a medical malpractice action. Second, the standard of care of a practitioner of the healing arts must be at issue. Third, the proposed expert witness must practice in the same profession in which the defendant is licensed. Finally, the proposed expert must have devoted at least 50% of his or her professional time in the 2 years preceding the alleged malpractice to actual clinical practice in that profession.

The primary dispute between the parties concerns the application of the term "profession." The parties do not dispute that Capt-

line is a licensed dentist who spends at least 50% of his professional time practicing oral and maxillofacial surgery.

K.S.A. 60-3412 applies to medical malpractice liability actions, which are defined in K.S.A. 60-3401(e) as actions arising out of the rendering of or failure to render professional services by a health care provider. "Health care provider," defined in K.S.A. 60-3401(c), has the meaning set forth in K.S.A. 1994 Supp. 40-3401(f), which, in addition to physicians, surgeons, osteopathic physicians, and chiropractors, includes a person licensed to practice any branch of the healing arts by the State Board of Healing Arts, a podiatrist licensed by the State Board of Healing Arts, an optometrist licensed by the Board of Examiners in Optometry, a pharmacist licensed by the State Board of Pharmacy, a licensed professional nurse who is authorized to practice as a registered nurse anesthetist, a licensed professional nurse who has been granted a temporary authorization to practice nurse anesthesia under K.S.A. 65-1153, a dentist certified by the State Board of Healing Arts to administer anesthetics under K.S.A. 65-2899 and amendments thereto, and a physical therapist registered by the State Board of Healing Arts. Although a dentist certified by the State Board of Healing Arts to administer anesthetics is listed, K.S.A. 1994 Supp. 40-3401 is silent as to dentists generally licensed by the State Dental Board. We note that in his deposition, Captline testified he is certified in Pennsylvania to give anesthetics.

Bise points out that he is a physician and a practitioner of the healing arts and that Captline is a dentist and not a practitioner of the healing arts. He asserts that dentists practicing their professions and dentists administering anesthesia to facilitate medical procedures conducted by a person licensed to practice medicine and surgery are not licensed or engaged in the practice of the healing arts. See K.S.A. 65-2872(k), (q). Bise concludes that in the malpractice action against him, only a licensed physician can qualify as an expert witness under K.S.A. 60-3412. To support this conclusion, Bise highlights the fact that he and Captline are licensed by different boards. Bise is licensed as a physician by the State Board of Healing Arts, whereas Captline, as a dentist, would be licensed by the State Dental Board if he practiced in Kansas. Bise

observes that the rules of the board governing dentists do not apply to physicians, who are governed by a different board, and vice versa. Bise reasons that as a dentist, Captline cannot be deemed to practice in the same profession in which Bise, a physician, is licensed. He stresses that a dentist, unlike a physician, is not qualified to care for other health concerns of the patient. Bise concludes that because he is a plastic and reconstructive surgeon and Captline admitted he was unfamiliar with the standard of care of a plastic surgeon, Captline cannot qualify as an expert witness.

Tompkins points out that the medical procedure used by Bise was oral and maxillofacial surgery, not plastic surgery. Tompkins stresses that, although a dentist, Captline routinely performed oral and maxillofacial surgery, the same procedure Bise, a physician, performed on Tompkins. Tompkins also notes that Bise's dentist expert witness, Thomas, testified that the standard of care of a dentist performing oral and maxillofacial surgery and of a plastic surgeon performing oral and maxillofacial surgery would be similar if not identical. He concludes that it is the specialty of oral and maxillofacial surgery, not the fact that one is a dentist or a physician, that qualifies both Bise and Captline to perform the procedure on Tompkins.

We agree that under the statutes Captline, a dentist, is not a practitioner of the healing arts. However, does K.S.A. 60-3412 require that the proposed expert witness also be a practitioner of the healing arts? There are two cases which have interpreted the requirements of K.S.A. 60-3412: *Wisker v. Hart*, 244 Kan. 36, 766 P.2d 168 (1988); and *Denton by Jamison v. U.S.*, 731 F. Supp. 1034 (D. Kan. 1990).

In *Wisker*, 244 Kan. 36, the issue was whether a general practitioner of medicine could testify as to the standard of care of a surgeon and vice versa. The *Wisker* court noted:

"K.S.A. 1987 Supp. 60-3412 is intended to prevent the use of 'professional witnesses.' That is, practitioners of healing arts who spend less than 50 percent of their professional time in actual clinical practice in their profession are considered to be 'professional witnesses' rather than practitioners of their profession. The statute was not intended to require that only a surgeon could testify as to the standard of care of another surgeon, etc. The weight afforded the testimony of

physicians testifying outside their area of professional specialization is a matter to be determined by the jury." 244 Kan. at 43-44.

Bise points out that the *Wisker* court used the language "practitioners of healing arts" and "physicians testifying outside their area of professional specialization." He infers from this that the *Wisker* court's holding that practitioners of different specialties could testify against one another applies only when the proposed expert witness and the defendant are both practitioners of the healing arts.

If one were to follow Bise's argument to its conclusion, one would conclude that any physician, surgeon, osteopathic physician, chiropractor, or other practitioner of the healing arts, defined in K.S.A. 60-3401, could testify as an expert witness in a medical malpractice case even though the practitioner was not qualified to perform the medical procedure performed by the defendant. That is not what *Wisker* holds. Although the *Wisker* court used the terms "physicians" and "practitioners of healing arts," the focus of the court's statement was to point out that the primary concern of the legislature in K.S.A. 60-3412 was with prohibiting the use of professional witnesses, not with the licensure of the expert witness.

In *Denton*, 731 F. Supp. 1034, the plaintiffs sought to have a doctor of osteopathy who had served only on the staffs of osteopathic hospitals testify concerning the defendant medical hospital's treatment of plaintiffs' decedent. The *Denton* court concluded that the doctor of osteopathy met the minimum qualifications of K.S.A. 60-3412 because both medical and osteopathic hospitals provide health care, both may be held to the same standard of care concerning the providing of health care, and both are licensed and regulated by the State of Kansas. The court recognized that the defendant would have the opportunity to attack the credibility and the accuracy of or authority for the witness' opinions and that the witness' credibility was a question for the trier of fact. 731 F. Supp. at 1036-37.

This court's discussion in *State v. Willis*, 256 Kan. 837, 888 P.2d 839 (1995), is informative. *Willis* involved the testimony of a licensed social worker that the alleged victim of a rape suffered from

post-traumatic stress disorder and that her behavior was consistent with rape trauma syndrome. Post-traumatic stress disorder is a medical diagnosis and mental illness, and rape trauma syndrome is one of many syndromes which attempt to designate or pinpoint the event or condition that may have led to the post-traumatic stress disorder. The *Willis* court recognized the admissibility of testimony concerning rape trauma syndrome and post-traumatic stress disorder but held that a licensed social worker is not qualified to diagnose medical and psychiatric conditions such as post-traumatic stress disorder. Rather, only a psychiatrist with training in the field of post-traumatic stress disorder and rape trauma syndrome and with professional qualifications to make appropriate diagnoses thereof may testify as an expert in the psychiatric field of post-traumatic stress disorder and rape trauma syndrome. 256 Kan. at 846-47.

The *Willis* court recognized that to qualify as an expert witness in the field, the witness must have the training in the field and the professional qualifications. Here, unlike in *Willis*, Captline and Bise were both qualified to diagnose and treat Tompkins' jaw injury. Their licensure procedure may have differed, but both were trained in and practiced oral and maxillofacial surgery.

Following the Court of Appeals' analysis of *Wisker*, a general medical practitioner with no training in oral and maxillofacial surgery would be qualified to testify as an expert witness as to Bise's performance of oral and maxillofacial surgery on Tompkins. Certainly Captline is better qualified than a general practitioner to testify as to the professional standard of oral and maxillofacial surgery. Unless K.S.A. 60-3412 specifically prohibits it, there is no rationale to exclude Captline's testimony in this action merely because he is licensed as a dentist rather than licensed as a physician.

It is elementary that if the meaning of a statute is plain, the sole function of the court is to enforce it according to its terms. Where a statute may be of doubtful meaning and is susceptible to two constructions, the court may look at the legislative history of the statute to assist in determining the meaning of the statute. If the legislative history does not assist the court as to which of the two constructions is correct, the court must select the reasonable con-

struction so as to avoid unreasonable or absurd results. If the legislature disagrees with the court's interpretation of the statute, the legislature has the power to set aside the court's interpretation by amending the statute.

Prior to the enactment of K.S.A. 60-3401 *et seq.*, the prerequisites for expert testimony in a medical malpractice case were stated in K.S.A. 60-419. In addition to the testimony being relevant and material, the statute states that the expert witness must have personal knowledge thereof, or experience, training, or education if such be required. The judge may receive conditionally the testimony of the witness as to a relevant or material matter, subject to the evidence of knowledge, experience, training, or education being later supplied in the course of the trial.

Medical malpractice reform occurred in 1985 with the enactment of Substitute S.B. 110. The legislature enacted K.S.A. 60-3412 as part of its efforts to check the rising cost of medical malpractice insurance. See *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 340, 789 P.2d 541 (1990). The original version of S.B. 110 included the following provision:

"In an action for malpractice against a physician or hospital, no person shall testify as a medical expert as to the standard of care unless that person is licensed to practice medicine and surgery in Kansas or a contiguous state, has current personal experience and practical familiarity with the medical subject forming the basis of the litigation and is actively engaged in direct patient care." S.B. 110, New Sec. 4(a)(2).

This provision was deleted when the substitute for S.B. 110 was adopted.

An interim committee on medical malpractice studied the need for further reform in 1985. The committee reported the arguments concerning what is now K.S.A. 60-3412 as follows:

"The [Kansas Medical Society argued] that Kansas health care providers should be judged by those familiar with standards of practice here and should not be subject to scrutiny from so-called experts from large urban centers or universities far from Kansas. *Some such experts were said to make their livelihood from court testimony.*" (Emphasis added.) Proposal 47, Medical Malpractice, Report on Kansas Legislative Interim Studies to the 1986 Legislature, pp. 817, 849 (December 1985).

The minority report concurred, stating that the goal of the new law was to "[q]ualify expert witnesses based upon a certain percentage of clinical practice to assure the setting of a fair and reasonable standard of care." Proposal 47, Medical Malpractice, Report on Kansas Legislative Interim Studies to the 1986 Legislature, Minority Report, p. 866.

Following the interim committee report, additional medical malpractice reform occurred in 1986. The provisions of K.S.A. 60-3412 were found in Section 16 of H.B. 2661. That section originally included the language currently found in K.S.A. 60-3412 with the additional requirement that the expert practice "in the same specialty if the defendant is a specialist."

Does K.S.A. 60-3412 require that the expert witness be licensed by the same board by which the defendant is licensed before the witness can testify in a medical malpractice action? The majority of the Court of Appeals panel in this case stated that K.S.A. 60-3412 requires that "the expert [witness] must be licensed in the same profession [as the defendant]." 20 Kan. App. 2d at 842. This statement is incorrect. K.S.A. 60-3412 is silent concerning the licensure of the expert witness. The statute only requires that the expert engage in "actual clinical practice *in the same profession* in which the defendant is licensed."

Although the language of K.S.A. 60-3412 could be interpreted to mean that the definition of "profession" is related to the licensure of the defendant, the statute does not contain any limitation on licensure. It is important to note that the language requiring that the witness practice the same specialty as the defendant was not included in the final version of the statute. Bise did not have to be licensed as a physician to treat Tompkins' jaw injury. Any physician or dentist trained in oral and maxillofacial surgery was qualified to treat Tompkins' injury. The definition of "profession" must be related to whether the expert is qualified to perform the procedure at issue and is not limited to the particular licensure of the defendant or the expert.

K.S.A. 60-3412 sets forth the minimum requirements of expert witnesses in medical liability cases. The statute requires that an expert witness in a medical malpractice action be engaged in a

similar or related area of practice as the defendant health care provider. K.S.A. 60-3412 does not require that a proposed expert in a medical malpractice liability action be licensed by the same professional board in which the defendant health care provider is licensed.

Captline satisfied the minimum requirements of K.S.A. 60-3412. Captline is a licensed professional who spent more than 50% of his practice treating jaw injuries similar to Tompkins'. The fact that Captline is licensed as a dentist, rather than as a physician, goes to the weight, not the admissibility, of his testimony. Captline's credibility and the weight of his testimony were matters for the jury to determine. Bise was amply able to point out to the jury the deficiencies he claimed in Captline's testimony by showing that Captline was not a physician, was not qualified to treat the entire patient, and was unfamiliar with the standard of care of a plastic surgeon. The trial court did not err in permitting Captline to testify as an expert witness under the facts of this case.

We need not reach the other issues raised by the parties.

The judgment of the Court of Appeals is reversed, and the judgment of the district court is affirmed.

LARSON, J., not participating.

SIX, J., dissenting: I would affirm the Court of Appeals and reverse the trial court.

The majority identifies the question before us as, "does K.S.A. 60-3412 require that an expert witness in a medical malpractice action be a health care provider licensed by the same professional board as the defendant, or does it require the expert witness to be engaged in performing a similar medical procedure as the defendant health care provider?"

By adopting the "performing a similar medical procedure" test, the majority has rewritten K.S.A. 60-3412.

I disagree with a 60-3412 interpretation that permits an expert witness to testify in a medical malpractice action if the expert is licensed in a different profession from the defendant health care provider.

*Wisker v. Hart*, 244 Kan. 36, 43-44, 766 P.2d 168 (1988), rejected the "related area of practice" standard for medical malpractice experts by holding that a physician expert was not limited to the defendant physician's professional specialty. The two physicians sued in *Wisker* were Dr. Davis, the decedent's family doctor, and Dr. Hart, a surgeon with whom Davis consulted concerning the decedent's condition. Justice (now Chief Justice) McFarland, speaking for the court in *Wisker*, observed:

"Dr. Schlachter [an expert witness] is a general practitioner of medicine. Dr. Lavigne [another expert witness] is a surgeon. The trial court construed K.S.A. 1987 Supp. 60-3412 to preclude a surgeon from testifying as to the standard of care applicable to general practitioners and vice-versa. Hence, it limited the jury's consideration of Dr. Lavigne's testimony to the standard of care of defendant Hart, a fellow surgeon, and the jury's consideration of Dr. Schlachter's testimony to the standard of care of defendant Davis, a fellow general practitioner.

"Plaintiff contends this was an erroneous construction of the statute. We agree. K.S.A. 1987 Supp. 60-3412 is intended to prevent the use of 'professional witnesses.' That is, practitioners of healing arts who spend less than 50 percent of their professional time in actual clinical practice in their profession are considered to be 'professional witnesses' rather than practitioners of their profession. The statute was not intended to require that only a surgeon could testify as to the standard of care of another surgeon, etc. The weight afforded the testimony of physicians testifying outside their area of professional specialization is a matter to be determined by the jury." 244 Kan. at 43-44.

The majority, by adopting the "similar or related area of practice" standard, has either overruled or seriously questioned *Wisker*. The rationale advanced by the majority for permitting Captline to testify against Bise is based on a perceived similarity of specialty, oral and maxillofacial surgery.

The majority overlooks the concept of "profession" placed in 60-3412 by the legislature, *"actual clinical practice in the same profession in which the defendant is licensed."* (Emphasis added.) In this malpractice action, only a licensed physician can qualify as an expert under K.S.A. 60-3412. Bise, a plastic surgeon, is licensed in the practice of medicine and surgery by the State Board of Healing Arts (K.S.A. 65-2802, K.S.A. 65-2812). Captline, as a dentist, would be licensed by the State Dental Board if practicing in Kansas (K.S.A. 65-1421, K.S.A. 74-1404). The "profession" in which Capt-

line is licensed is dentistry. Captline, a dentist, and Bise, a medical doctor, are not in the same profession. Captline has devoted no time *"to actual clinical practice"* in medicine and surgery, the *"profession in which the defendant is licensed."* (Emphasis added to the 60-3412 statutory language.) Captline is engaged in the actual clinical practice of dentistry. The type of surgery Captline performs, oral and maxillofacial surgery, is by regulation a specialty "branch of dentistry." Oral and maxillofacial surgery means:

"that branch of dentistry concerning the diagnosis, surgical and adjunctive treatment of disease, injuries and defects of the oral and maxillofacial region." K.A.R. 71-2-2.

K.S.A. 1994 Supp. 65-1423 relates to the regulation of dentists and dental hygienists. The practice of medicine is specifically excluded:

"Nothing in this act shall apply to the following practices, acts and operations:

"(a) To the practice of a person licensed to practice medicine and surgery under the laws of this state, unless such person practices dentistry as a specialty."

The majority's "performing a similar medical procedure" test would appear to permit: (1) a podiatrist to testify as to the standard of care for an orthopedic surgeon; (2) a midwife to testify as to the standard of care for an obstetrician (An obstetrician is a physician licensed by the State Board of Healing Arts. A midwife is a specialty branch of nursing licensed and governed by the State Board of Nursing. K.S.A. 65-1113[d] and [g]; K.S.A. 65-1130; K.A.R. 60-11-102. A midwife and obstetrician may be involved in "performing a similar medical procedure" [assisting in the birthing process]; however, they are not licensed in the same profession.); (3) a nurse anesthetist to testify as to the standard of care for an anesthesiologist (An anesthesiologist is a physician licensed by the State Board of Healing Arts. A nurse anesthetist is a specialty branch of nursing licensed and governed by the State Board of Nursing. K.S.A. 65-1113[g]; K.S.A. 65-1130; K.A.R. 60-11-102.); and (4) an optometrist to testify as to the standard of care for an ophthalmologist (Both are concerned with the eye. An ophthalmologist is a physician licensed by the State Board of Healing Arts. An optometrist is licensed by the State Board of Examiners in Optometry. K.S.A. 65-1502 and K.S.A. 65-1505.).

The legislature has been engaged in medical malpractice policy issues and related matters for almost 20 years. See *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 339, 789 P.2d 541 (1990). By enacting 60-3412, the legislature has undertaken the task of establishing expert witness requirements in medical malpractice actions. The majority has judicially grouped within the same profession (as the term is used in 60-3412) the following: dentists and physicians, podiatrists and orthopedic surgeons, midwives and obstetricians, nurse anesthetists and anesthesiologists, optometrists and ophthalmologists. If a policy interpretation that departs from the plain reading of K.S.A. 60-3412 is needed, the remedy lies with the law-making authority, not with this court.

ROBERT H. MILLER, C.J. Retired, assigned, joins the foregoing dissenting opinion.