The Honorable Chris Steineger State Senator, 6th District State Capitol, Rm. 523-S Topeka, Kansas 66612-1504
Dear Senator Steineger:
As Senator for the sixth district, you request our opinion regarding the proposed consolidation of the governments of the City of Kansas City, Kansas, and Wyandotte County. Specifically, you ask the following:
 1. Whether the election of members of the Unified Board of Commissioners complies with Section 2 of Article 4 of the Kansas Constitution;
 2. Whether members of the Unified Board of Commissioners are required by the consolidation plan or state statute to be residents of the area served by the Unified Board of Commissioners;
 3. Whether the consolidation plan in any way requires or allows consolidation of unified school districts within the area served by the Unified Board of Commissioners;
 4. Whether one local unit of government may be forced to pay for the bond indebtedness of another local unit; and
 5. Whether the Unified Board of Commissioners may issue additional bond indebtedness which exceeds the statutory debt ceiling
Through enactment of K.S.A. 1996 Supp. 12-340 et seq., the Kansas Legislature authorized the establishment of the Consolidation Study Commission of Kansas City, Kansas, and Wyandotte County. The purpose of the Study Commission was to prepare and adopt a plan addressing consolidation of the City and County or certain City and County offices, functions, services and operations. K.S.A. 1996 Supp. 12-343. Upon the conditions provided in subsection (f) of K.S.A. 1996 Supp. 12-343, the plan was to be submitted to the qualified electors of Wyandotte County.
 "(a) If the voters approve a plan which provides for the consolidation of the city and county, such consolidated city-county shall be subject to the provisions of this subsection.
. . . .
 "(l) The consolidated city-county shall be a county. The governing body of the consolidated city-county shall be considered county commissioners for the purposes of section 2 of article 4 of the constitution of the state of Kansas and shall have all the powers, functions and duties of a county and may exercise home rule powers in the manner and subject to the limitations provided by K.S.A. 19-101a, and amendments thereto, and other laws of this state." K.S.A. 1996 Supp. 12-345 (emphasis added).
Section 2 of Article 4 of the Kansas Constitution provides that "[n]ot less than three county commissioners shall be elected in each organized county in this state, as provided by law." The Constitution does not define who is a county commissioner.
Rules applicable in determining the proper meaning of a constitutional provision are set forth in State exrel. Stephan v. Finney, 254 Kan. 632 (1993).
 "In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers and adopters of that provision. In interpreting and construing the constitutional amendment, the court must examine the language used and consider it in connection with the general surrounding facts and circumstances that cause the amendment to be submitted. A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to persons of common understanding. State, ex rel., v. Highwood Service, Inc., 205 Kan. 821, Syl. ¶ 4, 473 P.2d 97 (1970). A constitution should not be interpreted in any refined or subtle sense but should be held to mean what the words imply to the common understanding of persons. State v. Sessions, 84 Kan. 856, Syl. ¶ 1, 115 P. 641 (1911). When interpreting the constitution, each word must be given due force and appropriate meaning. Colorado Interstate Gas Co. v. Board of Morton County Commr's, 247 Kan. at 660; State, ex rel., v. Hines, 163 Kan. 300, 304, 182 P.2d 865 (1947)." Finney, 254 Kan. at 654-55.
As originally enacted, Section 2 of Article 4 of the Constitution established the times at which general elections and township elections were to be conducted. A provision regarding election of county commissioners was not included within the section. In 1901, the Legislature adopted a resolution authorizing submission to the electorate of a question regarding amendment of Article 4 of the Constitution. See L. 1901, ch. 424, § 1. Following approval of "[t]he biennial election amendment to the constitution," L. 1901, ch. 424, § 2, Section 2 of Article 4 established the times at which general elections and township elections were to be conducted, provided the terms of office for designated county offices, and required that "[o]ne county commissioner . . . be elected from each of three districts, numbered 1, 2, and 3. . . ." The provision regarding county commissioners remained substantially unchanged until amendment of the constitutional provision in 1974, when Section 2 of Article 4 was amended to its present version.
At all times during which amendments to Section 2 of Article 4 were being considered, each county was governed by a board of county commissioners possessing powers similar to those set forth in K.S.A. 19-212. See
G.S. 1899, ch. 25, art. 2, § 19; K.S.A. 19-212. The intent of the makers and adopters of the amendments to Section 2 of Article 4 requiring election of county commissioners was to ensure that no fewer than three persons were elected to a governing board possessing powers regarding acquisition and maintenance of property and buildings for county purposes, settlement of accounts owed to or by the county, apportionment and levy of taxes within the county, organization and modification of townships located in the county, establishment of election precincts in townships in the county, establishment and maintenance of designated types of roads in the county, and performance of such other duties as prescribed by law. Pursuant to subsection (l) of K.S.A. 1996 Supp. 12-345, these powers are to be exercised by the governing body of the consolidated city-county. Given the purpose behind the amendments to Section 2 of Article 4, it is the ability to exercise the powers, rather than the title of the office, which determines whether the election of persons to serve in an office complies with Section 2 of Article 4. Despite the fact the powers would be conferred upon persons serving on a "unified board of commissioners" instead of a "board of county commissioners" as in other counties, election of the members of the Unified Board of Commissioners would meet the requirements set forth in Section 2 of Article 4 of the Kansas Constitution. As stated in K.S.A. 1996 Supp. 12-345, the members elected to the Unified Board of Commissioners are considered county commissioners for the purpose of Section 2 of Article 4 of the Kansas Constitution.
While members of the Unified Board of Commissioners are deemed county commissioners for purposes of Section 2 of Article 4 of the Constitution and for determining the powers, functions, and duties to be exercised by the Unified Board, members of the Unified Board are not deemed county commissioners subject to the residence requirements set forth in K.S.A. 19-202. In construing a statute, the maxim expressio unius est exclusioalterius (the mention or inclusion of one thing necessarily implies the exclusion of another) may assist in determining legislative intent that is not otherwise manifest, but it should not be employed to override or defeat a clearly contrary legislative intention.Degollado v. Gallegos, 260 Kan. 169, Syl. ¶ 5 (1996). As previously noted, K.S.A. 1996 Supp. 12-345 expressly provides the members of the Unified Board of Commissioners "shall be considered county commissioners for the purposes of section 2 of article 4 of the constitution of the state of Kansas and shall have all the powers, functions and duties of a county. . . ." The statute does not provide that the members of the Unified Board are to be deemed county commissioners for purposes of K.S.A. 19-202 when determining qualifications for serving as a member of the Unified Board of Commissioners, nor does the statute itself provide qualifications for serving as a member of the Unified Board of Commissioners. Further, the Legislature provided in the act detailed qualifications to be met by persons appointed to the five-member Consolidation Study Commission, see K.S.A. 1996 Supp. 12-342, but chose not to include such qualifications for persons who would serve as members of the Unified Board of Commissioners. The Legislature chose instead to establish guidelines for the Consolidation Study Commission, leaving to the Consolidation Study Commission the determination whether members of the Unified Board of Commissioners would be elected from member districts or as at-large members.See Attorney General Opinion No. 97-21. Under such circumstances, the Legislature chose not to include within the act residence qualifications to be met by members of the Unified Board of Commissioners. While the Study Commission report provides that eight members of the Unified Board of Commissioners are to be "nominated and elected in-districts [sic.] newly designated," with the remaining two members "nominated from within two newly designated Unified County Commission districts and elected at-large," the plan does not establish residence qualifications to be met by members of the Unified Board of Commissioners. Because there are no other constitutional or statutory provisions providing residence qualifications for such officers, it is determined members of the Unified Board of Commissioners are not required to be residents of the area served by the Unified Board of Commissioners.
The consolidation plan established pursuant to K.S.A. 1996 Supp. 12-341 et seq. does not require or allow consolidation of unified school districts within the area served by the Unified Board of Commissioners. The Consolidation Study Commission appointed pursuant to K.S.A. 1996 Supp. 12-342 was authorized to study and develop a plan for consolidation of the governing bodies of the City of Kansas City, Kansas, and Wyandotte County. The consolidated city-county was to be deemed a county and a city of the first class. K.S.A. 1996 Supp. 12-345. Unified school districts are organized pursuant to the School Unification Acts, K.S.A. 72-6732et seq., and are maintained, developed, and operated by locally elected boards of education. Kan. Const., Art.6, § 5. State statutes provide a procedure to be followed before consolidation of unified school districts may occur. See K.S.A. 72-8701 et seq. The Legislature has not authorized the Consolidation Study Commission to study the operations of unified school districts located in the area served by the Unified Board of Commissioners, nor has the Legislature authorized the Unified Board to maintain, develop, and operate schools within the area served by the Unified Board. The locally elected boards of education for unified school districts located within the area served by the Unified Board of Commissioners remain governmental entities separate and distinct from the consolidated city-county. Any consolidation of unified school districts located in the area served by the Unified Board of Commissioners must follow the procedure set forth in K.S.A. 72-8701 et seq.
As to your fourth question, K.S.A. 1996 Supp. 12-345
(f) provides:
 "Any bonded indebtedness and interest thereon incurred by the city or county prior to consolidation shall remain an obligation of the property subject to taxation for the payment thereof prior to such consolidation."
From the plain language of the statute, it is clear the Legislature intended each separate entity to remain solely responsible for any bond debt it had incurred prior to the consolidation.
As to your fourth question, K.S.A. 1996 Supp. 12-345(d) provides:
 "Except as provided in subsection (e), and in any other statute which specifically exempts bonds from the statutory limitations on bonded indebtedness, the limitation on bonded indebtedness of a consolidated city-county under this act shall be 30% of the assessed value of all tangible taxable property within such county on the preceding August 25."
(Subsection (e) lists the specific types of debt which will not be included in the computation of total bond debt for the consolidated city-county in determining debt limitations for the consolidated entity.)
The question is whether the 30% debt limitation includes in its computation all bond debt that was previously incurred by either local government, or whether the 30% limit will be comprised of debt incurred by the consolidated entity in addition to all previous indebtedness of either entity.
Bonded indebtedness is the general obligation debt of the municipality. K.S.A. 79-5037. General obligation debt is a municipalities' pledge of full faith and credit to payment of bond debt; the pledge gives the municipality authority to levy sufficient ad valorem taxes to pay the yearly interest on general obligation bonds and any bonds falling due that year. K.S.A. 10-113; 10-118. Statutory debt limitations prevent cities and counties from incurring bonded indebtedness beyond a certain level, calculated on the basis of assessed property valuations in a taxing district. K.S.A. 79-5037. A construction of K.S.A. 1996 Supp. 12-345(d) which permits the 30% debt limit to exclude all previous bond debt would expose property owners within the consolidated city-county to substantial, additional tax levies. The language of K.S.A. 1996 Supp. 12-345(d) does not support such an expanded burden on these property taxpayers. In construing legislative intent a reasonable result may be selected to avoid an unreasonable result. Tompkins v. Bise, 259 Kan. 39
(1996). It appears the more reasonable construction of the debt limit provision would include all current debt within the new debt ceiling and thereby preventing potentially dramatic increases tax liabilities.
Where a statute is susceptible of two constructions, a court may look to legislative history to assist in determining the meaning of the statute. Tompkins v.Bise, 259 Kan. at ¶ 3. The legislative history of K.S.A. 1996 Supp. 12-345 supports a construction of the statute which includes all previous debt in the 30% cap. Only one reference to the new debt limit was made in the 1996 legislative history. A representative of the League of Municipalities responded to Representative Mays' questioning with the statement that, "the combined bonded indebtedness subject to [the] new 30% lid was approximately 24% of the capacity provided by the 30% limitation." Minutes, House Committee on Local Government Affairs, January 30, 1996. The only purpose in calculating the combined indebtedness would be to examine the additional indebtedness remaining to the consolidated entity; the combined figure would be meaningless if the 30% limit were in addition to all previous debt.
In our opinion, the language of the statute, the result of the statute under the two constructions and the legislative history of K.S.A. 1996 Supp. 12-345
support the conclusion that the 30% debt limit in that statute includes all previous bonded indebtedness of the two separate entities.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
 Nancy L. Ulrich Assistant Attorney General
CJS:JLM:RDS:NLU:jm