The Honorable Lana Gordon State Representative, 52nd District 300 SW 10th Avenue Topeka, Kansas 66612
Dear Representative Gordon:
As Representative for the 52nd District, you ask for direction and clarification concerning K.S.A. 2010 Supp. 12-16,124(b)(2) that provides:
 Nothing in this section shall: . . . prohibit a city or county from regulating the manner of openly
carrying a loaded firearm on one's person; or in the immediate control of a person, not licensed under the personal and family protection act while on property open to the public;
Representative Lana Gordon *Page 2 
The italicized language in that provision was added to the statute during the 2007 legislative session.[1]
In general, courts will first look to the plain language of a statute to determine its meaning.[2] From the plain language of this statutory provision, several elements of its meaning are clear. First, the overall purpose of this provision is to set forth an exception to the state's general policy of pre-emption of local authority to regulate firearms. Second, the 2007 amendment to this statutory language clarifies the scope of that exception by narrowing it to allow cities and counties to regulate only the open carry of firearms, not the concealed carry of firearms. Third, the 2007 amendment further clarifies the scope of that exception by narrowing it to allow cities and counties to regulate only the open carry of loaded firearms, not unloaded firearms.
Thus, it is clear that this provision of law preserves the authority of cities or counties to regulate the open carrying of loaded firearms but does not preserve cities or counties' ability to regulate the concealed carry of firearms or their ability to regulate the open carry of unloaded firearms.
The remaining language in this statutory provision further qualifies the authority of cities and counties to regulate the open carrying of loaded firearms. However, the meaning of the remaining language is not apparent from a plain reading of it. Its ambiguity results from two items of punctuation: The placement of the semicolon in this provision has created a sentence fragment that has no independent meaning, and the placement of the comma in this provision results in uncertainty about what word or words the phrase after the comma is intended to modify.
Thus, the plain language of this statutory provision reveals some but not all of the law's meaning. When the plain language of a statute does not reveal the law's meaning, courts then will look behind the statutory language and attempt to ascertain the intent of the legislature in enacting the ambiguous statutory language.[3]
The legislative history of this provision is instructive. When introduced, the 2007 bill initially deleted all exceptions to the prohibition against cities and counties regulating the purchase, transfer, ownership, storage or transporting of firearms or ammunitions.[4] That suggests that the original intent of the 2007 amendment was to create uniformity in the state law to advance the policy of preemption of local authority to regulate firearms.
After the initial bill was introduced, spirited testimony was presented before the House Federal and State Affairs Committee by proponents and opponents of the bill.[5] Much of *Page 3 
the testimony appears to center on a debate about the merits or demerits of a policy of preemption. Following amendments made by this Committee and the House Committee of the Whole, the bill arrived in the Senate in substantially the same form that now appears in K.S.A. 2010 Supp.12-16,124(b)(2).
Thus, it would seem that reading the ambiguous language of this statutory provision in the manner that results in the greatest preemption of local control over the conduct of concealed carry permit holders would be the interpretation most consistent with the apparent legislative intent.[6]
To that end, it is necessary to analyze the variables in the remaining language of the statutory provision. There are two variables remaining in the language: Its application to concealed carry permit holders versus its application to non-permit holders and its application to persons openly carrying a firearm on their person (whether on public or private property) versus its application to persons openly carrying a firearm in their immediate control while on property open to the public.
Considering each possible combination of those variables results in four factual circumstances in which this provision may be applied. We consider those below and, in each case, offer our conclusion as to the most likely interpretation of the statutory provision in light of the language of the statute and the overall legislative intent of promoting preemption.
First, regulation of the manner of openly carrying a loaded firearm on the person of a concealed carry permit holder. We conclude that a city or county may regulate because the language of the statute is clear and unambiguous. The pertinent language would be read: "Nothing in this section shall: . . . prohibit a city or county from regulating the manner of openly carrying a loaded firearm on one's person . . ." This language does not distinguish between a holder of a concealed carry permit and a non-holder.
Second, regulation of the manner of openly carrying a loaded firearm on the person of a non-holder of a concealed carry permit. We conclude that a city or county may regulate because the language of the statute is clear and unambiguous. The pertinent language would be read: "Nothing in this section shall: . . . prohibit a city or county from regulating the manner of openly carrying a loaded firearm on one's person . . ." This language does not distinguish between a holder of a concealed carry permit and a non-holder. *Page 4 
Third, regulation of the manner of openly carrying a loaded firearm in the immediate control of a non-holder of a concealed carry permit holder (whether on public or private property). We conclude that a city or county may regulate because the most reasonable manner of reading the statute to give meaning to its final, grammatically challenged phrase, is as follows: "Nothing in this section shall: . . . prohibit a city or county from regulating the manner of openly carrying a loaded firearm . . . in the immediate control of a person[,] not licensed under the personal and family protection act while on property open to the public[;]"
Fourth, regulation of the manner of openly carrying a loaded firearm in the immediate control of a holder of a concealed carry permit when such holder is on public property. We conclude that a city or county may not regulate. The statute is silent on this factual circumstance. Therefore, this circumstance does not give rise to an exception to the general rule of pre-emption of local authority. This interpretation is consistent with the overall legislative intent of the 2007 amendments to this statute.
While we believe that the above analysis and conclusions are the interpretation of the statute that most nearly reflect the intent of the legislature, the ambiguity in the language itself does tend to render difficult the sort of "clear direction and precise clarification" you requested with respect to K.S.A. 2010 Supp. 12-16,124(b)(2). Should you wish to proceed with legislative clarification through a further amendment to this statute, legal staff at my office would be at your service.
Sincerely,

 DEREK SCHMIDT
 ATTORNEY GENERAL

DS:AEA:ke
[1] L. 2007, ch. 166, § 1.
[2] Tompkins v. Bise, 259 Kan. 39, 43 (1996).
[3] State v. Raschke, 289 Kan. 911, 914 (2009).
[4] 2007 HB 2528.
[5] Minutes, House Federal and State Affairs Committee, February 20, 2007.
[6] See testimony of Sen. Phillip Journey, Minutes, House Federal and State Affairs Committee, February 20, 2007 ("Cities may also prohibit non-licensees from carrying concealed or loaded unconcealed firearms on their persons.") and testimony of Ed Klumpp, Kansas Association of Chiefs of Police, Minutes, House Federal and State Affairs Committee, February 20, 2007 ("Our goal in working with the House members and others on this bill has been two fold. First, we need to retain the ability for cities to regulate persons not licensed under the act relating to firearms. . . . Second we wanted to clarify legislative intent to minimize any misunderstanding about what cities and counties can and can't do relating to concealed carry and other firearm issues addressed in this bill.")