**Lloyd LATSHAW, Plaintiff,**

v.

**MT. CARMEL HOSPITAL, Augusto Ramirez, M.D., and John P. White, D.O., Defendants.**

**No. Civ.A. 98–1027–KHV.**

United States District Court, D. Kansas.

April 16, 1999.

Dwight A. Corrin, Wichita, KS, Steven B. Larchuk, Malone, Larchuk & Middleman, Wexford, PA, for plaintiff.

Kristopher A. Kuehn, Blackwell Sanders Peper Martin LLP, Overland Park, KS, Jana V. Richards, Sanders Conkright & Warren LLP, Kansas City, MO, for Mt. Carmel Hosp., defendant.

Anthony F. Rupp, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for Augusto Ramirez, defendant.

Daniel P. Hanson, Hanson & Gurney, Overland Park, KS, for John P. White, defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Lloyd L. Latshaw brings suit against Dr. Augusto Ramirez, Dr. John White and Mt. Carmel Hospital, asserting medical malpractice. This matter comes before the Court on *Defendant Augusto Ramirez, M D.'s Motion To Strike Plaintiff's Expert Witness And For Summary Judgment On All Issues* (Doc. # 46) filed January 22, 1999, *John P. White's Motion To Exclude Expert Testimony* (Doc. # 52) filed March 12, 1999, and *Mt. Carmel Hospital's Motion to Exclude Expert Testimony* (Doc. # 59) filed April 13, 1999. For the reasons

set forth below, defendants' motions will be overruled.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely color-able or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52, 106 S.Ct. 2505.

### Standard For Admission or Exclusion of Expert Testimony

A district court may allow expert testimony if the expert's specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. The decision whether to admit or exclude expert testimony is committed to the sound discretion of the district court. *Getter v. Wal–Mart Stores, Inc.*, 66 F.3d 1119 (10th Cir.1995).

### Factual Background

The following material facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff.

On January 28, 1996, plaintiff attempted suicide by shooting himself in the abdomen with a handgun. Before firing the gun plaintiff placed a pillow between the gun and his abdomen. After the shooting, an ambulance crew transported plaintiff to the Mt. Carmel Medical Center emergency room. Dr. Ray, the emergency room physician, examined plaintiff. He then called Dr. Ramirez, a general surgeon, to examine plaintiff. An hour and a half later, plaintiff was transferred to the Intensive Care Unit (ICU). Dr. Ramirez was the attending general surgeon in the ICU. Dr. Ramirez did not perform any surgical procedures on plaintiff's gunshot wound. On January 29, 1996, plaintiff was transferred to the psychiatric unit, where Dr. White was the attending physician.

While plaintiff was in the hospital his gunshot wound exhibited signs of infection, but he received only one intravenous dose of antibiotics. The hospital discharged plaintiff on February 2, 1996. That same day, plaintiff's family physician, Dr. Sisk,

examined him and prescribed antibiotics for the infection.

In the following weeks plaintiff and his wife, occasionally noticed pillow material sticking out of the wound, and they removed some of it with tweezers. Later, a surgeon, Dr. Segal, performed three separate surgeries to remove material from the wound. Dr. Segal testified that all of the material could have been removed when plaintiff was initially treated at the hospital. Dr. Segal further testified that if the material had been removed then, the three surgeries would not have been required. Dr. Segal testified that plaintiff may require more surgeries to remove material from the wound, and that any residual material could continue to cause problems or inconvenience to plaintiff.

In the pretrial order plaintiff alleges that defendants were negligent because:

Despite knowing that [plaintiff's] wound was contaminated with significant amounts of pillow batting material, no steps were taken by any health care provider to properly evaluate and then explore and remove the foreign material. As a result, the wound went essentially untreated with predictable results.

Proper treatment required that the wound be explored, debrided and irrigated with sterile saline solution to remove all known contaminants. As a result of the failure of Dr. Ramirez/and or Dr. White to properly manage the patient's wound he was discharged several days later with an active infection. Although antibiotics were ordered by a family physician, the patient has had to undergo so far three separate surgical procedures to remove pillow batting material from the wound.

*Pretrial Order* (Doc. # 44) filed January 15, 1999.

Plaintiff designated Theodore Spirtos, M.D. as his only expert witness. Dr. Spirtos is a board certified emergency medicine physician with significant experience and expertise in evaluating emergency pa-

tients with surgical needs. Dr. Spirtos spent most of his internship year in general surgery. He has never practiced as a general surgeon and he does not hold himself out as an expert in general surgery. He has never been an attending physician in the ICU or on a psychiatric unit, and he does not claim expertise in the management of patients in those units. In his practice as an emergency room physician, Dr. Spirtos does not have close interaction with ICU nurses or psychiatric nurses, and he does not hold himself out as an expert in nursing.

Dr. Spirtos has opined that Dr. Ramirez breached his duty of care by failing to properly treat plaintiff's condition. Dr. Spirtos testified that the acceptable standard of care required surgery in which the wound was opened, debrided and irrigated, and all possible foreign bodies were removed. Dr. Spirtos did not testify as to the specific surgical technique that should be used. He testified that defendants' failure to properly treat the wound required plaintiff to have at least three additional surgeries.

Dr. Spirtos stated that infection was evident during plaintiff's hospital stay, and that the wound should have been cultured. He testified that administration of antibiotics was mismanaged. Dr. Spirtos also stated that while plaintiff was on the psychiatric floor, Dr. White had a duty to monitor plaintiff's condition and to diagnose and treat the wound infection and contamination.

In his expert report and testimony, Dr. Spirtos stated that the standard of care for nurses requires execution of physician orders, close monitoring and accurate charting. He also stated that nurses must advise attending physicians of all information that is important to evaluating and managing a patient's condition. He stated that the psychiatric nurses at Mt. Carmel Hospital failed to meet their duty to appropriately report the severity of plaintiff's condition to the attending physicians or to report it to more senior staff if necessary.

His opinion is based on reports by plaintiff and his wife that the wound was open, inflamed and draining while plaintiff was on the psychiatric unit. Dr. Spirtos also stated that the nursing staff failed to make notes sufficient to raise a concern about a possible infection. Dr. Spirtos also stated, however, that Drs. Ramirez and White had some concern that plaintiff had an infection while he was at the hospital. Dr. Spirtos stated that the psychiatric nursing staff failed to insure that plaintiff received treatment for his infection.

Plaintiff claims that if defendants had provided proper care for his wound, he would not have suffered the physical pain, discomfort, inconvenience, and disability that he alleges resulted from the additional surgeries. Plaintiff seeks past lost wages from March 1, 1996, through March 1, 1999, and lost future wages for 15 years. *See* Pretrial Order (Doc. # 44) filed January 15, 1999, at p. 2.

Plaintiff testified that after his injury he did not return to his work as a truck driver because he was planning to move out of state and he was afraid of getting dirt in the wound. Plaintiff moved to Pennsylvania in February 1996 and has applied for one job, at a convenience store. The record indicates that plaintiff has potentially disabling conditions, including severe low back pain due to spondylosis and spinal stenosis, and suffers from dysthymia and mild anxiety. Dr. Spirtos, however, will not offer any opinion that plaintiff is disabled as a result of the gunshot wound or the treatment that defendants provided. Dr. Allan Segal, plaintiff's treating physician since 1996, and Dr. Paul Caton, plaintiff's treating chiropractor since 1996, also offer no opinion whether the gunshot wound or surgery associated with it caused plaintiff's back problems. In Dr. Caton's opinion, a work-related injury caused plaintiff's back problems prior to the gunshot wound.

## Analysis

Under Kansas law, in order to establish a claim for medical malpractice, plaintiff must show that defendants owed him a duty, that they breached this duty, and that a causal connection exists between the breach and plaintiff's injuries. *Sharples v. Roberts,* 249 Kan. 286, 294, 816 P.2d 390, 396 (1991). In order to meet this burden, plaintiff ordinarily must produce expert medical testimony on all three elements. *See id.,* 249 Kan. at 295, 816 P.2d at 397–98. "Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation." *Bacon v. Mercy Hosp.,* 243 Kan. 303, 307, 756 P.2d 416, 420 (1988). Plaintiff does not assert that the common knowledge exception applies in this case. Thus he must produce expert testimony on the applicable standard of care and causation.

Under Kansas law, a physician has a duty to use reasonable and ordinary care and diligence in the diagnosis and treatment of his or her patients, to use his or her best judgment, and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other physicians in the same or similar locations under like circumstances. *Durflinger v. Artiles,* 234 Kan. 484, 489, 673 P.2d 86, 92 (1983). What constitutes "the reasonable and ordinary care of physicians in the same or similar locations under like circumstances" is to be established by the use of expert testimony. *Chandler v. Neosho Memorial Hospital,* 223 Kan. 1, 5, 574 P.2d 136, 139 (1977).

Expert testimony is also required to show that the physician breached the duty owed, or in other words that he or she failed to use reasonable care in the diagnosis and treatment of the patient. Finally, expert testimony is necessary to establish that there is a causal connection between the breach and the injuries sustained. This causal connection is eq-

uated with the term proximate cause, which is a cause that in the natural and continuous sequence of events produces the injury, and without which the injury would not have occurred. *Sharples,* 249 Kan. at 295, 816 P.2d at 397. Negligence is never presumed and may not be inferred merely from a lack of success or an adverse result from treatment. *Bacon v. Mercy Hospital of Ft. Scott, Kan.,* 243 Kan. 303, 307, 756 P.2d 416, 420 (1988). Nor does liability arise if the adverse result is due to some cause other than treatment by the physician. *Durflinger,* 234 Kan. at 489, 673 P.2d at 92. A physician is only at fault when his negligence is shown to have caused or contributed to the plaintiff's injury. *Sharples,* 249 Kan. at 295, 816 P.2d at 397 (citing *Allman v. Holleman,* 233 Kan. 781, 667 P.2d 296, Syl. 4, 233 Kan. 781, 667 P.2d 296 (1983)).

*Rios v. Bigler,* 847 F.Supp. 1538, 1542 (D.Kan.1994), *affirmed,* 67 F.3d 1543 (10th Cir.1995).

## I. *Motions To Strike or Exclude Expert Testimony*

All three defendants seek to disqualify Dr. Spirtos from testifying as an expert witness under Federal Rule of Evidence 702. Dr. Ramirez and Dr. White further assert that Dr. Spirtos is not qualified under Kansas law to testify as an expert witness on the standard of care required of a surgeon or a psychiatrist.

### A. *Kansas Standards For Expert Witness Testimony In Medical Malpractice Actions*

K.S.A. § 60–3412 provides that a physician must meet certain requirements to qualify as an expert witness in a medical malpractice case. The statute provides as follows:

> In any medical malpractice liability action, as defined in K.S.A. 60–3401 and amendments thereto, in which the standard of care given by a practitioner of the healing arts is at issue, no person

shall qualify as an expert witness on such issue unless at least 50% of such person's professional time within the two-year period preceding the incident giving rise to the action is devoted to actual clinical practice in the same profession in which the defendant is licensed.

K.S.A. § 60–3412.

Rule 601 of the Federal Rules of Evidence provides that "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." In this medical malpractice case Kansas law provides the rule of decision. Thus, K.S.A. § 60–3412 governs the competency of Dr. Spirtos to testify as an expert witness. *See Denton v. United States,* 731 F.Supp. 1034, 1036 (D.Kan.1990). Dr. Ramirez and Dr. White each assert that under Section 60–3412, Dr. Spirtos is not competent to testify as an expert witness on the issue of the applicable standard of care.

### 1. *Dr. Ramirez*

■ Dr. Ramirez asserts that Dr. Spirtos, who spent virtually all of his professional time in the last two years practicing clinical emergency medicine, is not qualified to testify as an expert on the standard of care for a surgeon. Dr. Ramirez contends that Dr. Spirtos does not meet the Section 60–3412 requirement that an expert must have spent 50 percent of his professional time in actual clinical practice in the same *profession* in which defendant is licensed. This argument is problematic because courts have not interpreted the statute to require an expert to practice in the identical medical speciality as the defendant. For example, in *Wisker v. Hart,* 244 Kan. 36, 766 P.2d 168 (1988), the Kansas Supreme Court held that a general practitioner of medicine could testify as to the standard of care of a surgeon. The *Wisker* court noted that the purpose of K.S.A. § 60–3412 is to prevent the use of "professional witnesses"—those who spend

less than 50 percent of their professional time in clinical practice—as expert witnesses. The *Wisker* court then stated:

> The statute was not intended to require that only a surgeon could testify as to the standard of care of another surgeon, etc. The weight afforded the testimony of physicians testifying outside their area of professional specialization is a matter to be determined by the jury.

244 Kan. at 43–44, 766 P.2d at 174.

Dr. Ramirez acknowledges that K.S.A. § 60–3412 has not been interpreted to require that an expert practice in the same speciality of defendant, but relies on *Tompkins v. Bise,* 259 Kan. 39, 49, 910 P.2d 185, 191 (1996), for the proposition that the "definition of profession must be related to whether the expert is qualified to perform the procedure at issue." The Court believes, however, that Dr. Ramirez reads *Tompkins* too broadly. In *Tompkins,* the Court addressed the question whether a dentist could properly testify as an expert on the standard of care for oral and maxillofacial surgery by a defendant physician. The Court rejected the idea that practitioners of different specialities could testify against one another only when the proposed expert witness and the defendant are both "practitioners of the healing arts." The Court further found that the expert witness need not be licensed by the same board by which the defendant is licensed. The Court then held that the proposed expert could testify because he was engaged in a similar or related area of practice to the defendant, and was qualified to diagnose and treat plaintiff's injury. Although the majority opinion in *Tompkins* may have put the holding of Wisker in doubt, it did not overrule it. In fact, the *Tompkins* majority reaffirmed *Wisker* to the extent that it stated that "the fact that [the expert] is licensed as a dentist, rather than as a physician goes to the weight, not the admissibility, of his testimony." 259 Kan. at 50, 910 P.2d at 192. Further, the Court notes that *Tompkins* can be read as interpreting Section 60–3412 in such a way as to include, rather than exclude, expert testimony.

The Court rejects Dr. Ramirez's argument that simply because Dr. Spirtos is not a general surgeon he is not qualified to testify on the standard of care for treating plaintiff's gunshot wound. Plaintiff has provided evidence that Dr. Spirtos routinely assesses such wounds, and that he was qualified to determine that such a wound needed surgical treatment. The fact that Dr. Spirtos could not testify as to the precise methods that a surgeon might have employed does not disqualify him from being able to testify that failure to perform any surgery fell below the standard of care for treatment of such a wound. Further, at trial defendants will be given the opportunity to cross-examine Dr. Spirtos to point out any deficiencies in his opinion.

### 2. *Dr. White*

■ Dr. White also argues that Dr. Spirtos, as an emergency medical physician, is not qualified to testify as to the standard of care for a psychiatrist. Dr. White points out that Dr. Spirtos testified that he does not have expertise in the management of patients in a psychiatric unit. Dr. White argues that under Section 60–3412, in order to qualify as an expert, Dr. Spirtos would have had to practice in the profession of providing psychiatric care during the two years before the incident. The parties cite no case law which indicates whether Kansas courts would consider an emergency medical physician and a psychiatrist to be practicing the same profession as required by statute. But Dr. Spirtos' proposed testimony is simply that an attending psychiatrist on a hospital psychiatric unit has the responsibility to check a wound to ascertain whether it requires further treatment. The Court believes that allowing Dr. Spirtos to testify as an expert on the standard of care in these circumstances is a reasonable application of the rule in Kansas. It certainly does not circumvent any purpose of Section 60–

3412 to prevent the use of "professional witnesses."

## B. *Federal Rule of Evidence 702*

All three defendants argue that the Court should exclude Dr. Spirtos' testimony under Fed.R.Evid. 702, which provides that a witness qualified by knowledge, skill, experience, training, or education, may testify in the form of opinion as to scientific, technical, or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. Under *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), when expert scientific testimony is offered, a district court "must determine at the outset, pursuant to [Fed.R.Evid.] 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592, 113 S.Ct. 2786. The district court may consider several nondispositive factors in determining whether a particular scientific theory or technique is reliable. The Court must also determine the relevance of the testimony by determining whether the reasoning or methodology properly can be applied to the facts in issue.

The Tenth Circuit has ruled that a court need not consider the *Daubert* factors where expert testimony is not based upon a particular scientific methodology or technique, but "solely upon experience or training." *Compton v. Subaru of Am., Inc.,* 82 F.3d 1513, 1519 (10th Cir.1996). The Supreme Court recently held, however, that *Daubert's* interpretation of Fed. R.Evid. 702, which imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable," applies to all expert testimony, whether "scientific" or not. *Kumho Tire Co. Ltd., v. Carmichael,* — U.S. ——, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Defendants argue that Dr. Spirtos' proferred expert opinion testimony on the standard of care for a surgeon, psychiatrist, or psychiatric nurse is not reliable because he does not have the required knowledge and experience in the fields of general surgery, psychiatry, or nursing. Dr. Ramirez notes that Dr. Spirtos does not manage the overall care of gunshot wound patients, and that he does not have the expertise to perform the exploration, debridement, and irrigation of the wound which (as he testified) was required. Likewise, Dr. White notes that Dr. Spirtos is not trained or experienced in psychiatry, and has no expertise in managing patients in a psychiatric unit, although he has testified that the standard of care for a psychiatrist required that Dr. White monitor the wound to ensure that plaintiff receive proper treatment for it. Finally, Mt. Carmel Hospital notes that Dr. Spirtos is not trained in nursing and has no experience in nursing or in managing patients in a psychiatric unit.

Although Dr. Spirtos may not be able to testify to the precise surgical technique that Dr. Ramirez should have used, an emergency medical physician who has performed the initial evaluation of gunshot wounds is qualified to testify when surgical intervention is required. Similarly, although Dr. Spirtos is not a psychiatrist, he has experience and training in treating patients admitted for self-inflicted gunshot wounds as well as infections. *Cf. Denton,* 731 F.Supp. at 1036 (applying Fed.R.Evid. 702 and determining that osteopath was qualified as an expert by skill or experience to testify to standard of care for medical hospital, and that his expert testimony would assist trier of fact). Finally, Dr. Spirtos testified that he has knowledge and training in treating infections and in standards for managing patient care, including charting and monitoring wounds.

Under Fed.R.Evid. 702, the Court finds that Dr. Spirtos' testimony will assist the trier of fact in understanding the evidence and determining a fact in issue. Plaintiff has presented evidence that Dr. Spirtos is

trained and experienced in the profession of medicine and that he is qualified to testify about his knowledge. Of course defendants will have the opportunity to cross-examine Dr. Spirtos and question his credibility and the authority for his opinions. Dr. Spirtos is qualified to testify as an expert witness and to offer his opinions on whether defendants met the applicable standard of care in treating plaintiff. Thus the motions to strike by Dr. Ramirez, Dr. White, and Mt. Carmel Hospital will be overruled.

*II. Dr. Ramirez' Motion for Summary Judgment Based On Lack Of Expert Testimony on Causation*

 Dr. Ramirez argues that even if the Court allows Dr. Spirtos to testify as an expert, he is entitled to summary judgment because plaintiff has offered no expert testimony on causation. Dr. Ramirez points out that Dr. Spirtos has acknowledged that he is not offering an opinion on the causes of plaintiff's alleged disabling back problems. Dr. Spirtos is not offering an opinion that plaintiff is disabled, and none of the treating physicians are offering testimony that the three additional surgeries caused plaintiff to be disabled.

The Court agrees that plaintiff has not offered evidence that negligence by any defendant caused plaintiff to be permanently disabled. But Dr. Spirtos has offered an opinion that defendants' failure to properly treat plaintiff required three further surgical procedures This alone would support plaintiff's claim of physical pain and inconvenience, if not his claim for disability and long-term lost wages. Thus, although the Court agrees that plaintiff's damages may be significantly limited by his failure to offer evidence that defendants' negligence caused him to be disabled, the Court finds that Dr. Ramirez is not entitled to summary judgment.

**IT IS THEREFORE ORDERED** that *Defendant Augusto Ramirez, M.D.'s Motion To Strike Plaintiff's Expert Witness And For Summary Judgment On All Is-*

*sues* (Doc. # 46) filed January 22, 1999, defendant *John P. White's Motion To Exclude Expert Testimony* (Doc. # 52) filed March 12, 1999, and defendant *Mt. Carmel Hospital's Motion to Exclude Expert Testimony* (Doc. # 59) filed April 13, 1999, be and hereby are **OVERRULED.**